UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHOT OHANYAN,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF CALIFORNIA CITY DETENTION, et al.,<br><br>Respondents. | No. 1:25-cv-01661-TLN-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee proceeding through appointed counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1). Currently pending before the court is petitioner's motion for a temporary restraining order (ECF No. 13) as well as petitioner's amended § 2241 petition (ECF No. 12). Both have been fully briefed by the parties. ECF Nos. 15, 18. Since respondents requested that the Court treat their opposition to the TRO as their return to the § 2241 petition itself, the undersigned, in the interests of judicial economy and after having provided notice to petitioner, recommends granting petitioner's habeas corpus application and denying the motion for a TRO as moot.

I.      **Factual and Procedural History**

Petitioner is an Armenian asylum seeker who has been detained by Immigration and Customs Enforcement ("ICE") since entering the United States on November 18, 2024. ECF

1

Nos. 12 at 6, 13-4 at 3; ECF No. 15 at 14-16 (DHS Record of Deportable/Inadmissible Alien).[1] He has no criminal history outside of his arrest in Armenia due to his political opinion, which forms the basis for his asylum claim. ECF No. 12 at 9, ECF No. 15 at 15. Petitioner has not yet had a merits hearing on his asylum claim and his detention has now lasted over 14 months. ECF No. 13.

Petitioner and his wife were stopped by U.S. Customs and Border Protection ("CBP") at the San Ysidro Port of Entry without valid documentation, but they requested asylum based on past persecution in Armenia due to their political opinion. ECF No. 12 at 6. After being separated from his wife, petitioner was transferred to the South Texas ICE Processing Center. ECF No. 12 at 6; ECF No. 13-3 at 3-4 (Declaration of Attorney Jacqueline Marie Brown). Petitioner's wife was released from ICE custody within three days of entering the United States. ECF No. 13-8 at 3 (Letter from Kristine Mkrtchyan). In December 2024, an asylum officer determined that petitioner had a credible fear of persecution if returned to Armenia. ECF No. 12 at 6; ECF No. 13-3 at 4. As a result, petitioner was placed in standard removal proceedings and served with a Notice to Appear ("NTA") before an immigration judge ("IJ"). ECF No. 12-2 at 3-5. Petitioner's first master calendar hearing was held on February 3, 2025. ECF No. 13-3 at 4; ECF No. 13-4 (NTA); ECF No. 13-5 at 3-4 (Notice of Internet-Based Hearing). At that hearing, with the assistance of counsel, petitioner admitted the allegations of removability in his NTA and indicated he would file an asylum application. ECF No. 13-3 at 4.

Petitioner filed his asylum application on March 7, 2025. ECF No. 12 at 7; ECF No. 13-3 at 4. At a hearing in Pearsall, Texas on March 11, 2025, petitioner's individual merits hearing on his asylum application was set for April 30, 2025. ECF No. 13-3 at 4; ECF No. 13-5 at 5-8 (Notices of Internet-Based Hearing); ECF No. 13-7 at 5-9 (Pre-trial Order of the IJ). On the immigration court's own motion, the merits hearing was continued to May 15, 2025. ECF No. 13-5 at 9-10 (Notice of Internet-Based Hearing). Prior to that hearing date, petitioner's

---

[1] The court grants respondents' request to take judicial notice of petitioner's I-213 form. See Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

1    immigration lawyer requested a continuance because supporting documents from Armenia had
2    not yet arrived. ECF No. 13-7 at 14-21. The immigration court granted petitioner's motion and
3    continued the hearing to July 24, 2025. ECF No. 12 at 7; ECF No. 13-7 at 10-11.
4         Approximately one month before petitioner's merits hearing, ICE transferred him from
5    the South Texas ICE Processing Center to the Mesa Verde ICE Processing Center in California.
6    ECF Nos. 12 at 7, 13-3 at 4, 13-6 at 3. As a result, his immigration case was transferred to an IJ
7    in Adelanto, California who reset a master calendar hearing to August 11, 2025 and then again to
8    August 12, 2025. ECF No. 13-3 at 4-5; ECF No. 13-5 at 12-15 (Notices of Internet-Based
9    Hearing).
10        On August 20, 2025, petitioner did have a preliminary bond hearing before an IJ. ECF
11   Nos. 12 at 7-8, 13-3 at 5. However, the IJ found that petitioner was not likely eligible for bond
12   due to his status as an arriving alien, and his immigration counsel was advised to withdraw the
13   bond application. Id. There is no indication in the record that the IJ made any finding that
14   petitioner was either a flight risk or a danger to the community. Id.
15        Petitioner's August 2025 master calendar hearing was continued once again, this time to
16   September 29, 2025. ECF No. 13-3 at 5; ECF No. 13-5 at 16 (Notice of Hearing). Before that
17   scheduled hearing, petitioner's immigration attorney filed a motion requesting that his case be set
18   for an individual merits hearing since he had been in custody for nine months. ECF No. 13-7 at
19   22-25. That motion was granted and petitioner's merits hearing was scheduled for November 3,
20   2025. ECF No. 13-7 at 12-13.
21        In the meantime, petitioner was once again transferred, this time to the California City
22   Detention Center, causing his case to be transferred to a different immigration court and assigned
23   to another IJ. ECF Nos. 12 at 8, 13-3 at 5. This resulted in his merits hearing being continued to
24   December 8, 2025. Id.; ECF No. 13-5 at 17 (Notice of Hearing).
25        On November 20, 2025, after being detained for 12 months, petitioner filed a pro se §
26   2241 petition challenging his prolonged detention. ECF No. 1. The Court appointed petitioner
27   counsel and served the § 2241 petition on respondents. ECF No. 3.
28        In December 2025, petitioner's merits hearing was once again continued by the

3

1  immigration court.  ECF No. 13-3 at 5; ECF No. 13-5 at 18 (Notice of Hearing).  Currently,
2  petitioner's merits hearing is scheduled for March 5, 2026.  Id.

### A. TRO Motion and Amended § 2241 Petition

4        On January 12, 2026, petitioner filed an amended § 2241 petition through appointed
5  counsel, along with a motion for a temporary restraining order requesting declaratory and
6  injunctive relief.  ECF No. 12.  Specifically, petitioner requests his immediate release from
7  detention based on the violation of his Fifth Amendment right to due process, or, in the
8  alternative, a bond hearing within seven days before a neutral decisionmaker where the
9  government has the burden of demonstrating by clear and convincing evidence that petitioner is a
10 danger to the community or a flight risk.  ECF Nos. 12 at 2, 13 at 3.

11       In demonstrating irreparable harm to justify a TRO, petitioner indicates that the conditions
12 at the California City Detention Facility are "prison-like," with the food being barely edible and
13 the water barely drinkable.  ECF Nos. 12 at 8, 13 at 6.  As a result, his physical and mental health
14 have deteriorated during his confinement.  See ECF No. 13-8 at 3.  His wife describes petitioner's
15 declining mental health during his prolonged detention as a result of being "completely
16 deprived… of contact with his family, his home church, and his spiritual support system[.]"  ECF
17 No. 13-8 at 3.

18       Petitioner contends in both his TRO as well as his amended § 2241 petition that his
19 prolonged detention without meaningful review violates the Fifth Amendment's protection
20 against the arbitrary deprivation of his liberty.  ECF No. 13 at 7-8; ECF No. 12 at 10-16 (First
21 Amended § 2241).  As a matter of procedural due process, petitioner submits that the government
22 is required to provide bond hearings to noncitizens facing prolonged detention.  ECF No. 12 at
23 10.  Petitioner submits that civil detention without a bond hearing is unconstitutional when it
24 exceeds six months.  ECF No. 12 at 11-12.  Even without such a bright-line rule, petitioner's
25 prolonged detention is unreasonable under the due process standards announced in Mathews v.
26 Eldridge, 424 U.S. 319 (1976), and, alternatively, German Santos v. Warden Pike Correctional
27 Facility, 965 F.3d 203, 211 (3d Cir. 2020).  ECF No. 12 at 12-13.  According to petitioner, the
28 Mathews factors demonstrate that he is entitled to an individualized bond hearing before a neutral

4

1  adjudicator.  ECF No. 12 at 15.

2  Petitioner also raises an as-applied substantive due process challenge to his ongoing
3  detention because it does not serve any legitimate government interest based on his lack of a
4  criminal record or a risk of flight.  ECF No. 13 at 9-10.  Based on the numerous delays directly
5  attributable to ICE and "the immigration courts' inability to maintain hearing schedules,"
6  petitioner further argues that his prolonged 14 month detention is unreasonable.  Id. at 12.
7  Petitioner submits that this transforms his custody into a "detention for other reasons" based on
8  the unreasonable delay by immigration authorities "in pursuing and completing deportation
9  proceedings," which Justice Kennedy's concurrence in Demore v. Kim, 538 U.S. 510, 532-33
10 (2003), recognized would be protected by the Due Process Clause.  ECF No. 13 at 12.

### B. Opposition to TRO

12 In a combined opposition to the TRO as well as a return to the § 2241 petition,
13 respondents argue that petitioner is subject to mandatory detention while his asylum application
14 remains pending based on 8 U.S.C. § 1225(b)(1)(B)(ii).  ECF No. 15 at 3-4.  Respondents further
15 submit that "[m]andatory detention may not be reconsidered by an immigration judge based on
16 any alleged lack of danger or flight risk posed by the [noncitizen], as the relevant regulation
17 provides that an Immigration Judge may not redetermine the conditions of custody imposed by
18 DHS on '[a]rriving [noncitizens] in removal proceedings' such as petitioner."  ECF No. 15 at 3-4
19 (citing 8 C.F.R. § 1003.19(h)(2)(i)(B)).  According to respondents, the actual length of
20 petitioner's detention does not form any basis for relief based on the language of the mandatory
21 detention statute of 8 U.S.C. § 1225(b)(1).  Id. at 4.  In support of this assertion, respondents cite
22 the Supreme Court's decision in Demore v. Kim, 538 U.S. 510 (2003), which rejected a facial
23 challenge to mandatory detention under 8 U.S.C. § 1226(c) for noncitizens with aggravated
24 felony convictions.  Id. at 4-5.  While acknowledging that the Fifth Amendment's Due Process
25 clause applies to noncitizens, respondents emphasize that any such challenge "must account for
26 the government's countervailing interests in immigration enforcement[.]"  Id. at 6 (citing
27 Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205-06 (9th Cir. 2022)).  Respondents contend that
28 Zadvydas v. Davis, 533 U.S. 678 (2001), "has no application here, where petitioner's removal

1  proceedings are still pending, with his next asylum hearing set for March 5, 2026." Id. at 6.
2  Respondents also point out that petitioner's period of detention was extended due, in part, to his
3  request for a continuance of his May 2025 merits hearing. Id. at 7. Respondents suggest that
4  DHS was not responsible for any delays in petitioner's asylum hearing because it did not file a
5  continuance motion in immigration court. Id. After suggesting that this "Court should decline to
6  engage in any of the various multi-factor balancing tests" in resolving petitioner's procedural due
7  process challenge, respondents ultimately contend that none of the factors outlined in Mathews v.
8  Eldridge, 424 U.S. 319 (1976), or Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022),
9  favor granting relief to petitioner in this case. Id. at 7-10. With respect to any remedy granted to
10 petitioner, respondents ultimately indicate that the appropriate relief is a bond hearing and not
11 immediate release from detention. Id. at 11.

12 **C. Reply**

13 Based on the January 16, 2026 notice issued by the Court, petitioner filed a combined
14 reply to respondents' answer to the § 2241 petition and opposition to the TRO motion. ECF No.
15 18 at 2. Petitioner reiterates that his claims for relief are as-applied due process challenges. ECF
16 No. 18 at 2. The Supreme Court decisions cited by respondents were limited to facial challenges
17 to immigration detention statutes under different circumstances which do not apply to this case.
18 Id. Petitioner points out that respondents never addressed the substantive due process challenge
19 to petitioner's 14 month detention and did not provide any evidence that he is a flight risk or
20 danger to the community. Id. at 2-4. Absent such evidence, petitioner's ongoing detention does
21 not serve any legitimate governmental purpose. Notably, it took a mere three days for DHS to
22 determine that detention was not necessary in petitioner's wife's case, who is also an Armenian
23 asylum seeker who entered without legal documents. Id. at 3; see also ECF No. 12-1 at 3 ¶ 6.
24 Respondents' argument that petitioner has no protected liberty interest based on his status as a
25 noncitizen seeking admission who has never been paroled "is constitutionally untenable and
26 would permit indefinite detention without any limits whatsoever." Id. at 4. With respect to the
27 delay in adjudicating petitioner's asylum claim, petitioner indicates that his single continuance
28 request only resulted in a two-month continuance which was the immigration court's choice to

1 reschedule for that period of time. Id. at 5. The remaining additional year of detention is
2 attributable to "DHS transfers and court delays, not from Mr. Ohanyan." Id. Moreover,
3 petitioner argues that the record in this case does not support respondents' argument that there is a
4 definite end point to petitioner's detention at his next immigration hearing on March 5, 2026. Id.
5 at 6. "The government's promise that 'this time' the hearing will occur rings hollow after three
6 cancellations." Id.

      **II.**      **Legal Standards**

      **A. Constitutional Standards**

9 The Due Process Clause protects persons in the United States from being deprived of life,
10 liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has
11 concluded that "the Due Process Clause applies to all 'persons' within the United States,
12 including [non-citizens], whether their presence here is lawful, unlawful, temporary, or
13 permanent." Zadvydas, 533 U.S. at 693. This provision "protects individuals against two types
14 of government action: violations of substantive due process and procedural due process." United
15 States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). Freedom
16 from imprisonment or physical restraint is a "fundamental" right at the "core of the liberty
17 protected by the Due Process Clause." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017)
18 (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). As a matter of substantive due process,
19 governmental action may only infringe a fundamental right if "the infringement is narrowly
20 tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).
21 Courts examine procedural due process claims in two steps: the first step is determining
22 whether there exists a protected liberty interest under the Due Process Clause. The second step
23 examines the procedures necessary to ensure any deprivation of that protected liberty interest
24 accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454,
25 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due
26 process applies, the question remains what process is due."). In deciding what process is due to
27 immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test
28 articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz, 53 F.4th

at 1206-07.  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others."  Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

### B. Statutory Immigration Framework

An applicant for admission without documents that permit lawful entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process.  8 U.S.C. § 1225(b)(1)(A)(i).  But if a § 1225(b)(1) [non-citizen] "indicates either an intention to apply for asylum ... or a fear of persecution," then that [non-citizen] is referred for an asylum interview.  8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview, the non-citizen is to remain detained.  See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  If an immigration officer determines after that interview that the [non-citizen] has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).  At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.  The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3.  Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A).  Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  Id.

### III.   Analysis

A writ of habeas corpus is "available to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates that his or her custody violates the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

### A. Petitioner Has a Protected Liberty Interest Against Unjustified Detention

This case turns on the scope of constitutional protections afforded to a non-citizen who has not been admitted into the United States, but has a pending claim for asylum that has been determined to be credible. Based on the bona fide nature of petitioner's asylum claim, he is not subject to expedited removal, but instead a prolonged period of detention as his individual case is heard first by an IJ and then, potentially, by the Board of Immigration Appeals and the Ninth Circuit Court of Appeal if either party pursues further review. Given the protracted nature of obtaining merits review of his asylum claim and not one, but two potential appeals, there is no clear end in sight to petitioner's detention, which has now lasted for over 14 months.

Respondents take the position that petitioner's due process rights go no further than the procedures set out in the statutory scheme that authorizes his detention. See 8 U.S.C. § 1225(b). Because that mandatory detention scheme does not provide for detention hearings before a neutral decision maker, respondents' position is that petitioner lacks a due process right to a hearing to determine whether his detention is justified. However, petitioner notes that his due process rights to liberty from unjustified detention are well established. "[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately "alleged a right to substantive due process to bond hearings" because "the Supreme Court has consistently

held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that theimprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [noncitizens] were not protected by even the substantive component of constitutional due process, … we do not see why the United States government could not torture or summarily execute them. … [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). Moreover, mandatory detention statutes like § 1225(b)(1) are subject to constitutional limitations on an as-applied basis. See, e.g., Nielsen v. Preap, 586 U.S. 392, 420 (2019); Demore, 538 U.S. at 532-33 (2003) (Kennedy, J., concurring).

**B.     Due Process Framework for Evaluating Petitioner's Claim to a Bond Hearing**

Petitioner argues that he is entitled to a bond hearing under the procedural due process Mathews v. Eldridge, 424 U.S. 319 (1976), framework.[2] The court applies that framework here and concludes that a prompt bond hearing is necessary, at which bond hearing respondents will bear the burden demonstrating continued detention is warranted. See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *4 (E.D. Cal. May 16, 2025), adopted by 2025 WL 1808676 (E.D. Cal. July 1, 2025) (applying Mathews in case involving § 1225(b)(1) detention to order a bond hearing

---

[2] While the procedural due process framework is sufficient for resolving this petition, the undersigned notes that substantive due process would also dictate that a bond hearing is necessary to test whether further prolonged detention is justified. See Padilla, 704 F. Supp. 3d at 1172 (recognizing need for bond hearings under substantive due process because "non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"). Moreover, even if a neutral decision maker were to find that petitioner poses some danger or risk of flight, his ongoing detention might still violate substantive due process in light of the length and harsh conditions of his detention. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) (ordering remedy after applying five-factor test drawn from case law "regarding detention before criminal trial and civil commitment proceedings [to determine] whether continued detention" under another mandatory detention statute, 8 U.S.C. § 1226(c), "violates substantive due process"); ECF No. 13-3 (Brown Decl. ¶¶ 24, 26).

before an immigration judge); Maksim v. Warden, Golden State Annex, et al., No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328 (E.D. Cal. Oct. 9, 2025) (same); Tigranyan v. Warden of California City Detention, No. 1:25-cv-01554-DJC-SCR, 2026 WL 91765 (E.D. Cal. Jan. 13, 2026) (applying Mathews), adopted by 2026 WL 130843 (Jan. 16, 2026).

### 1. Private Interest

Turning to the first factor in Mathews, petitioner has a strong liberty interest in avoiding prolonged detention without a neutral detention hearing. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner has been detained over 14 months. Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged. See Zadvydas, 533 U.S. at 701; Tigranyan, No. 1:25-cv-01554-DJC-SCR, 2026 WL 91765 (E.D. Cal. Jan. 13, 2026) (finding a 14 month detention qualified as prolonged), adopted by 2026 WL 130843 (Jan. 16, 2026). An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Lopez v. Garland, 631 F.Supp.3d 870, 880 (E.D. Cal. 2022) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted).

While some of petitioner's prolonged detention is the result of one continuance he requested in his immigration court proceedings, the majority of continuances have resulted from a clogged immigration court docket or transfers of petitioner to different ICE detention centers, for which respondents are solely responsible. See Lopez, 631 F.Supp.3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process."); Demore, 538 U.S. at 532-33 (2003) (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."). Petitioner correctly points out that

although he has an merits hearing date in immigration court, that does not mean that his asylum application will be resolved on that date based on the record of continuing merits hearings. Moreover, a decision by the IJ is not the end of petitioner's asylum case since either side may appeal to the BIA and then petition for review by the Ninth Circuit resulting in petitioner remaining in detention. Thus, there is no clear end date for petitioner's detention on the record before this court.

Petitioner also identifies credible information tending to show harsh conditions at California City, which are particularly troubling in light of petitioner's reportedly deteriorating mental health. See ECF No. 13-3 (Brown Decl. ¶¶ 24, 26); Doe v. Chestnut, __ F.Supp.3d __, No. 1:24-CV-00943-EPG-HC, 2025 WL 3240400, *20-*22 (E.D. Cal. Nov. 20, 2025) ("[t]he evidence now before the Court at least suggests several important ways in which the conditions at [California City] are not only inherently harsh but also worse than the conditions […] in state prison.") (citing Doe, 732 F.Supp.3d. at 1089 (N.D. Cal. 2024)). All of these circumstances combine to tip the first Mathews factor strongly in petitioner's favor.

### 2. Risk of Erroneous Deprivation

"[T]he probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided [] no procedural safeguards at all." Maksim, 2025 WL 2879328, at *5. "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds); see also, Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"); Diop v. ICE, 656 F.3d 221, 235 (3d Cir. 2011) (detention of an non-citizen under mandatory detention statute for "nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"). Against this background, a bond hearing is a critical procedural safeguard because it provides both the noncitizen and the government with an opportunity to present witness testimony

or evidence and be heard before a neutral adjudicator. This factor also favors petitioner.[3]

### 3. Government's Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim, 2025 WL 2879328, at *5 (citations omitted). "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Id. (citation and quotation omitted). Petitioner's individual request for a bond hearing also involves a minimal fiscal and administrative burden. There is no basis in the record to find, any fiscal or administrative burden to the government that would result from providing a bond hearing to petitioner. The undersigned also finds that a hearing at which the government must justify Mr. Ohanyan's continued detention actually serves to promote the Government's interest in minimizing the enormous impact of incarceration in cases where it serves no purpose. See Velasco-Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020). This factor also weighs in favor of petitioner.

In light of this analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted and respondents be ordered to provide him a bond hearing before an IJ within seven days where the IJ must order petitioner released unless the government proves that he is a risk of flight or danger to the community by clear and convincing evidence. See Maksim, 2025 WL 2879328, at *6 (adopting clear and convincing evidence burden in similar circumstance); Singh, 638 F.3d at 1204 ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake ... are both particularly important and more substantial than mere loss of money."); Tigranyan v. Warden of California City Detention, No. 1:25-cv-01554-DJC-SCR, 2026 WL 91765 (E.D. Cal. Jan. 13, 2026), adopted by 2026 WL

---

[3] Respondent does not suggest that the humanitarian parole provision of 8 U.S.C. § 1182(d)(5)(A) provides an adequate procedural safeguard against petitioner's prolonged detention.

13

130843 (Jan. 16, 2026) (granting a bond hearing to an asylum seeker detained for 14 months). Given that a bond hearing is the appropriate remedy on the current record, petitioner's request for immediate release should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Respondents be ordered to provide petitioner with a bond hearing before an IJ within seven days from the date of this order where the IJ must order petitioner released unless respondents prove that he is a risk of flight or danger to the community by clear and convincing evidence.

3. Within 3 days from the date of the bond hearing, respondents be directed to file a notice in this court certifying compliance with the above provision.

4. Petitioner's motion for a TRO (ECF No. 13) be denied as moot in light of the recommendation to grant the § 2241 petition on the merits.

5. The Clerk of Court be directed to enter judgment in favor of petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  January 23, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

14